```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MURIANDA RUFFIN, | Civil No. 15-501 (NLH/AMD) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant. | |

**APPEARANCES**:

KATIE ANN PILGREN
ARI R. KARPF
KARPF, KARPF & CERUTTI, P.C.
3331 STREET ROAD, SUITE 128
TWO GREENWOOD SQUARE
BENSALEM, PA 19020
    On behalf of plaintiff

KERRIE RESTIERI HESLIN
NUKK-FREEMAN & CERRA, P.C.
26 MAIN STREET
SUITE 301
CHATHAM, NJ 07928
    On behalf of defendant

**HILLMAN, District Judge**

   Presently before the Court is defendant's motion for summary judgment.  Plaintiff asserts employment discrimination claims.  For the reasons expressed below, defendant's motion will be granted.

                            BACKGROUND

   Plaintiff, Murianda Ruffin, a black (African-American) female, was hired on June 2, 2008 by defendant Allstate Insurance

Company as a trial attorney.  Plaintiff claims that during her employment she was subjected to discrimination and retaliation due to her race, including the denial of authorization to take certain continuing legal education courses, the selective enforcement of leave policies, the denial of a promotion because she complained about racial inequality.  She also asserts she was forced to resign on August 6, 2014 while on medical leave when Allstate learned she had filed a complaint with the New Jersey Division on Civil Rights.

Plaintiff filed a three-count complaint against Allstate, claiming wrongful termination, failure to promote, and race discrimination and retaliation in violation of 42 U.S.C. § 1981 (Counts I and II), and violations of the Family Medical Leave Act, 29 U.S.C. § 2611, et seq. ("FMLA") (Count III).  Plaintiff subsequently amended her complaint by leave of Court to add counts for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").

Previously, Allstate moved to dismiss plaintiff's complaint because it contended that plaintiff settled all of her claims against Allstate during a New Jersey Division of Civil Rights ("DCR") mediation.  Allstate argued that plaintiff's entire case is barred by that settlement agreement, which Allstate attached as an exhibit to its motion.  The Court denied Allstate's motion, determining that the settlement agreement could not be considered

on a Rule 12(b)(6) motion. The Court also declined to convert Allstate's motion into one for summary judgment. The Court, however, directed the parties to meet with the Magistrate Judge to develop an expedited discovery plan to address Allstate's contention that a settlement agreement barred plaintiff's entire complaint. (Docket No. 16.)

The expedited discovery has now been completed, and Allstate, by way of a motion for summary judgment, has renewed its argument that plaintiff's entire case is barred by the settlement agreement. Plaintiff has opposed Allstate's motion, essentially arguing that the settlement is invalid, but that even if it were valid, it does not bar her other discrimination claims that were not the subject of her DCR complaint, which only concerned a failure to promote claim.[1]

## DISCUSSION

### A.  Jurisdiction

This Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331.

### B.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied

---

[1] As discussed below, even though plaintiff repeatedly characterizes her DCR complaint as limited to her failure to promote claim, plaintiff's complaint to the DCR also contains claims related to differential treatment in being denied authorization for continuing legal education (CLE) courses and paid time off (PTO).

that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion

4

for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.**    **Analysis**

Plaintiff filed a verified complaint with the New Jersey Division of Civil Rights (DCR) against Allstate on April 7, 2014, claiming that Allstate discriminated and retaliated against her in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  Plaintiff contended that she experienced "differential treatment" and was "denied promotion" because of her "race/black," because Allstate did not approve all of her requests for Continuing Legal Education ("CLE") and Paid Time Off ("PTO"), and because Allstate denied her a promotion to a Trial Attorney II position.  (Docket No. 29-5 at 70-72.)

DCR mediator, Darrell Booker, held a mediation with plaintiff and Allstate on August 5, 2014.  Plaintiff represented herself, and David Schaffer, in-house counsel for Allstate, represented Allstate.  After negotiating from Allstate's initial offer of $10,000, plaintiff accepted $20,000.  Before the parties left the mediation, plaintiff wrote in her own handwriting the following:

5

>     email: mlruffin@juno.com
>     Agreement of $20K gross ½ half per 1099, health insurance
>     continued through 8/31/2014, no contesting unemployment
>     compensation via release, no expectation to return to office.

(Docket No. 33-3.)  Plaintiff and Mr. Schaffer both signed the written document.

Plaintiff returned her corporate credit card, I.D. card, and building entry card to Mr. Schaffer.  At that point, because plaintiff had a doctor's appointment, the parties left the building.  Later that evening, plaintiff and Mr. Schaffer exchanged text messages to arrange for plaintiff to upload her personal photos and information from Allstate's mobile telephone and company laptop to a .zip drive before returning the devices to the company.  The next day, August 6, 2014, plaintiff returned her company-issued laptop to Allstate, and Mr. Schaffer followed up with an email to plaintiff, informing her that he was in the process of preparing a formal version of their agreement.

On August 7, 2014, Mr. Schaffer sent the formalized version of the settlement to plaintiff.[2]  On August 8, 2014, plaintiff returned her company-issued iPhone to Allstate.  Plaintiff also deposited the first settlement payment into her bank account.

---

[2] Plaintiff never signed the "Confidential Settlement Agreement and General Release" prepared by Allstate and emailed to plaintiff on August 7, 2014.  (Docket No. 29-4 at 143-151.)  Plaintiff objects to various portions of the agreement, and argues that the parties do not have an enforceable settlement agreement because the terms in the agreement were not discussed at the mediation.  Plaintiff's position on this issue is addressed below.

Also on August 8, 2014, plaintiff retained a lawyer, who wrote Allstate a letter that stated that plaintiff still considered herself to be an employee of Allstate and that she would like to return to work as soon as possible. After this, Allstate communicated with plaintiff's counsel. On August 22, 2014, Allstate deposited the second settlement payment into plaintiff's account, and on August 29, 2014, Allstate made the third settlement payment into plaintiff's account. On August 31, 2014, plaintiff filed for unemployment benefits, noting that Allstate would not contest her unemployment benefits application because of the August 5, 2014 settlement. On October 3, 2014, Allstate deposited the final settlement payment of $10,000 into plaintiff's account.[3]

On October 8, 2014, a new law firm, and plaintiff's current counsel, wrote to Allstate on plaintiff's behalf. Counsel stated that plaintiff "adamantly disagrees that she settled her claims and resigned from her position with Allstate," and that it is plaintiff's "position that no settlement has been reached in the case and that Ms. Ruffin did not resign from her employment; but rather, was forced out of Allstate and coerced into signing a

---

[3] Even though plaintiff's counsel offered the return of the $20,000 to Allstate, plaintiff has not returned the money. On February 28, 2015, plaintiff filed her 2014 taxes. On her Form-1040, under "other income," Plaintiff identified $10,000 from the "Allstate Wrongful Termination Settlement." There is no reference to the other $10,000.

7

document stating that she would accept $20,000 in exchange for her resignation." (Docket No. 29-5.) The letter also informs Allstate that plaintiff never intended to relinquish other claims she had against Allstate, separate from the failure to promote claim, which was the only subject of her DCR complaint.[4]

The basis for plaintiff's forced-resignation argument is Allstate's Outside Practice of Law Policy. The policy states, in relevant part:

> The Allstate Code of Ethics states that, "[f]or employees who are attorneys, regardless of the position they hold with the Company, the practice of law is restricted to Company business, except with permission of the General Counsel or her designee."
> . . .
> [F]or each specific instance permission must be obtained from the General Counsel or her designee in accordance with the process set forth below:  . . .
>
> --Representing oneself in a legal matter.

(Docket No. 29-5 at 33.)

During the mediation, Mediator Booker met with Schaffer and plaintiff separately. Schaffer informed Booker that an investigation was being conducted to determine whether plaintiff had violated the policy when she represented herself in a landlord/tenant matter without first receiving permission from Allstate. According to plaintiff, Booker told plaintiff that if she returned to work the next day, she would be terminated for a violation of Allstate's outside practice of law policy. Plaintiff

---

[4] But see note 1, and <u>infra</u> at page 19.

contends that even though she did not want to resign from her $79,000/year job for $10,000 or $20,000, he stated that if she did not accept the money and resign, she risked going into work, getting fired, and not receiving anything.  (Docket No. 29-5 at 29-30.)  Plaintiff claims that because she was effectively terminated already, she felt like she was under duress and had no choice but to accept the deal.  (Id.)

   Allstate argues that the settlement agreement written by plaintiff - a seasoned attorney – is valid and enforceable.  Allstate argues that plaintiff voluntarily resigned and relinquished not only her failure to promote claim, but all claims she thought she had against Allstate at the time, when confronted with the reality that she was facing immediate termination for her violation of the outside practice of law policy.

   In response, plaintiff argues that her forced resignation invalidates whatever settlement the parties came to at the mediation.  She also argues that settlement agreements which arise during mediation must specifically memorialize in writing all the elements of the settlement prior to the conclusion of the mediation session, or such a settlement is not enforceable.  Plaintiff further argues that because the subject of her complaint before the DCR related solely to her failure to promote claim, and because the parties never discussed other claims she might have against Allstate, including Allstate's alleged violation of her

9

FMLA rights for her forced-resignation a day after she returned from FMLA leave, her other claims against Allstate are not barred.

The basic principles of settlement agreements are not disputed by the parties:

> State law governs the construction and enforcement of settlement agreements in federal court. [New Jersey law] holds that "an agreement to settle a lawsuit is a contract which, like all other contracts, may be freely entered into, and which a court, absent a demonstration of 'fraud or other compelling circumstance' shall honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J.Super. 118, 124–25, 462 A.2d 186 (App. Div. 1983).
>
> Traditional contract law rules provide that a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992) (citations omitted). To be enforceable, a contract must also be accompanied by consideration. In bilateral contracts or agreements . . . where the parties make mutual promises to do some future act, "the consideration of the promise of one party is a promise on the part of the other."
>
> Despite these strict requirements, parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document. "[I]f the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed." Thus, so long as the parties agree upon the essential terms of a settlement, leaving the details to be "fleshed out" in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing.

Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 348–49 (D.N.J. 1996) (some internal citations omitted).

A settlement agreement obtained through mediation has a separate set of conditions in order to be enforceable. "[I]f the

10

parties to mediation reach an agreement to resolve their dispute, the terms of that settlement must be reduced to writing and signed by the parties before the mediation comes to a close. In those cases in which the complexity of the settlement terms cannot be drafted by the time the mediation session was expected to have ended, the mediation session should be continued for a brief but reasonable period of time to allow for the signing of the settlement." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 71 A.3d 888, 900 (N.J. 2013). This rule "is intended to ensure, to the extent humanly possible, that the parties have voluntarily and knowingly entered into the settlement and to protect the settlement against a later collateral attack. A settlement in mediation should not be the prelude to a new round of litigation over whether the parties reached a settlement. The signed, written agreement requirement--we expect--will greatly minimize the potential for litigation." Id.

Plaintiff argues that the settlement agreement reached at mediation is invalid because it was not fully reduced to writing at the mediation session. To support her argument, plaintiff points to the "Confidential Settlement Agreement and General Release" prepared by Allstate and emailed to plaintiff on August 7, 2014. Because Allstate wanted plaintiff to agree to terms other than those discussed and memorialized at the mediation, plaintiff contends that the entire settlement is unenforceable.

In response, Allstate argues that it is only seeking to enforce the written agreement plaintiff wrote with her own hand at the mediation session, and not the extra paperwork sent to plaintiff afterward.

Heeding the wisdom of the New Jersey Supreme Court that "[o]ne of the main purposes of mediation is the expeditious resolution of disputes," and that "it should not spawn more litigation," the Court finds the following:

**The Scope of the Parties' Settlement**

Plaintiff's memorialization of the parties' settlement at the mediation satisfies the <u>Willingboro Mall</u> requirement that terms of that settlement must be reduced to writing and signed by the parties before the mediation comes to a close.  The "Confidential Settlement Agreement and General Release" Allstate sent to plaintiff after the mediation session is not part of the settlement, because the majority of the terms therein were not discussed at the mediation, and were not contained in the written agreement drafted and signed at the mediation.  Even though Allstate sent plaintiff the "Confidential Settlement Agreement and General Release" after the mediation, that action does not invalidate the written and signed agreement that was completed at the session.

### The Settlement Agreement Resolved the Claims in the DCR Complaint and Only Those Claims

The settlement agreement only pertains to the resolution of plaintiff's claims contained in her DCR complaint. Even though Schaffer testified that the parties discussed a "full release" of all claims during the mediation (Docket No. 36-3 at 6), Schaffer never directly spoke with plaintiff regarding the settlement terms, including the scope of the release. Moreover, the written agreement, which states, "no contesting unemployment compensation via release," does not contain the word "full," and it cannot be interpreted to encompass all claims that plaintiff could lodge against Allstate. If the settlement was conditioned upon plaintiff's release of her pending DCR claims and all other potential claims she might have against Allstate, Mr. Schaffer should have directed plaintiff to specifically indicate that requirement in the written settlement document. Per <u>Willingboro Mall</u>, such a material condition is required to be included in the written document at the conclusion of the mediation in order to be enforceable.

The provision is clear enough, however, to indicate plaintiff's agreement that she was releasing the subject of her pending claims before the DCR. As we have noted, although plaintiff repeatedly characterizes her DCR complaint as limited to her failure to promote claim, plaintiff's complaint to the DCR also contains claims related to differential treatment in being

13

denied authorization for continuing legal education (CLE) courses and paid time off (PTO).

Indeed, plaintiff testified that the settlement was intended to resolve only her DCR complaint. She released such claims in exchange for $20,000, continued health insurance, uncontested unemployment compensation, and "no expectation to return to office." To hold otherwise would render the phrase "no contesting unemployment compensation via release" superfluous. Accordingly, absent duress which we discuss below, Defendant is entitled to summary judgment on Counts II and V of the First Amended Complaint.

### Plaintiff Was Not Under Duress and Resigned Voluntarily Pursuant to the Terms of the Settlement

The settlement agreement is not voidable due to duress. Plaintiff claims that she was forced into resigning because she was informed by the mediator that she was either (a) about to be fired due to an investigation into her violation of the outside practice of law policy, or (b) was already terminated. Putting aside the conflicting premises, and even accepting plaintiff's feeling that she had "no choice" but to resign, the evidence in the record does not support a finding that plaintiff was under "duress" when she agreed to, and wrote down, the terms of the settlement of her DCR complaint.

Under New Jersey law, a contract is voidable based on duress if a contracting party is deprived of the exercise of free will

14

because of wrongful pressure or threats.  Mac Naughton v. Harmelech, 2016 WL 3771276, at *7-8 (D.N.J. July 13, 2016) (citing Rubenstein v. Rubenstein, 120 A.2d 11, 13-15 (N.J. 1956)).  "'The act or conduct complained of need not be unlawful in the technical sense of the term; it suffices if it is wrongful in the sense that it is so oppressive under given circum[s]tances as to constrain one to do what his free will would refuse.'"  Id. at 15 (quoting Rebenstein, 120 A.2d at 15).  In defining "economic duress," the Supreme Court of New Jersey has stated "'that the decisive factor is the wrongfulness of the pressure exerted.'"  Id. (quoting Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 459 A.2d 1163, 1175 (1983)).  "'Where there is adequacy of consideration, there is generally no duress . . . .  Whenever a party to a contract seeks the best possible terms, there can be no rescission merely upon the grounds of 'driving a hard bargain.'  Merely taking advantage of another's financial difficulty is not duress.  Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion . . . .  Under this rule, the party exerting pressure is scored only for that for which he alone is responsible.'"  Id. (quoting Cont'l Bank, 459 A.2d at 1175-76 (quoting 13 Williston, Contracts § 1617 at 708 (3d ed. 1970)).

    Simply stated, "it is black-letter law that there is no duress when a party simply threatens to do what it has a legal

right to do," and "threatening an employee's position, as a matter of law, cannot meet the stringent 'duress' standard." Shine v. TD Bank Fin. Grp., 2011 WL 3328490, *6 (D.N.J. Aug. 2, 2011) (citing Warner-Lambert Pharmaceutical Co. v. Sylk, 471 F.2d 1137, 1144 n. 24 (3d Cir. 1972)); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 911 (3d Cir. 1985) (no economic duress when employee ordered to sign employment contract under threat of termination); Mosley v. Bay Ship Mgmt., Inc., 174 F. Supp. 2d 192, 199 (D.N.J. 2000) (citations omitted) ("Both the Court of Appeals for the Third Circuit and the New Jersey Appellate Division have held that 'economic pressure alone is not enough to constitute duress rendering an otherwise valid release void.'").

In this case, plaintiff was informed at mediation that Allstate was conducting an investigation into whether plaintiff violated the outside practice of law policy, and that if it was determined that she had violated the policy, she was subject to termination. According to either of plaintiff's premises, the mediator informed plaintiff that Allstate had concluded that she violated the policy and was effectively already fired, about which she would learn the next day when she came into work, or Allstate was likely to soon come to that conclusion and terminate her shortly thereafter. Neither premise, however, supports a threat, let alone the repression of plaintiff's free will.

Allstate did not say, "release your claims before the DCR or

16

you will be fired."[5]  Instead, plaintiff was informed of her termination, or impending termination, and had two choices:  (1) plaintiff could release her DCR claims, accept $20,000, continued health benefits, and uncontested unemployment insurance, and not return to the office; or (2) plaintiff could maintain the status quo: continue to prosecute her DCR claims, return to the office the next day, and face the results of the investigation.  Having the ability to make a choice between the status quo and another option is not duress.  Moreover, that the mediator recognized and informed plaintiff of her two choices does not amount to a threat to accept one outcome over the other.

**Plaintiff's Other Claims are Barred Because**
<u>**She Suffered No Adverse Employment Action**</u>

Defendant argues that even if plaintiff did not release her claims other than her DCR claims, those claims are barred because she cannot demonstrate that she suffered an adverse employment action, which is a required element of all her claims, because she voluntarily resigned from her job.  We agree.

The Court has already found that plaintiff cannot void the settlement agreement due to duress, and that one of the elements of the settlement agreement was her voluntary decision not to return to work.  It follows, therefore, that any claim predicated

---

[5] Even if Allstate had made such a "threat," because plaintiff accepted consideration in the form of $20,000, continued health benefits, and uncontested unemployment insurance, it would not be considered "duress" sufficient to void the settlement.

17

on termination as the adverse employment action fails as a matter of law.  Jones v. McCormick & Schmick's Seafood Restaurants, Inc., 2014 WL 1669808, *5 (D.N.J. Apr. 28, 2014)(Bumb, J.).  Each of the remaining counts allege termination as the adverse action.  (Count 1, par. 30; Count III, para. 45; Count IV, para. 50; and Count VI, para. 64).  In light of our determination that Plaintiff voluntarily resigned her position with the defendant as contemplated by the settlement agreement, Defendant is entitled to summary judgment on those counts as well.

## CONCLUSION

For the reasons expressed above, Allstate's motion for summary judgment shall be granted on all counts of the First Amended Complaint.  An appropriate Order will be entered.


Date:  September 30, 2016              s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.